UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE - DISTRICT OF ALASKA

# MEMORANDUM

DATE: July 25, 2006

REPLY TO ATTN OF: Marci D. Lundgren
Senior U.S. Probation/Pretrial Services Officer

SUBJECT: **Pickett, Kevin**
**4:06-cr-0021-001**

VIOLATION OF CONDITIONS OF RELEASE

TO: Lt. Eve. Zamora
Special Assistant U.S. Attorney

CC: The Honorable Terrance W. Hall
U.S. Magistrate Judge

On June 15, 2006, the defendant appeared before the Honorable Terrance W. Hall, U.S. Magistrate Judge, at which time conditions of release were ordered. One of the release conditions imposed ordered the defendant to "maintain residence at a halfway house or community corrections center, as deemed necessary by the pretrial services office or supervising officer."

On June 23, 2006, the defendant was transported by U.S. Probation/Pretrial Services Officer Marci Lundgren and U.S. Marshal Don Bennett to the North Star Community Correctional Center.

On July 6, 2006, the Court approved a proposal for third-party transportation by the defendant's wife, Lynn Pickett, to transport the defendant back from his employment (a one-way transport) to the North Star Center. This proposal was approved when it was determined that the defendant was working 10 hour days, during hours in which the Van Runs from the North Star Center did not coincide with the defendant's hours.

According to an incident report issued by the Cornell Pre-Release, dated July 17, 2006, "*on Saturday July 16, 2006, at approximately 1400, (RM3) Resident monitor Nguyen, Sharon came in contact with Resident Pickett, Kevin's wife Pickett, Lynn Ann. At that time I advised Mrs. Picket that she had to wait in the lobby, due to another issue going on in the holding area. At that time, Mrs. Picket went on to say to Mrs. Nguyen, that it's the time she can drop items for her husband. I then again explained to her she had to wait, and I will be with her in a moment. Mrs. Pickett then asked who was the shift supervisor on duty. Ms. Nguyen advised her that it was Mr. Evans. Mrs. Pickett then went right by Ms. Nguyen, disregarding any of Ms. Nguyen's authority. At that time Ms. Nguyen advised Mr. Evans that Mrs. Pickett was disregarding her authority. Mr. Evans then explained to Mrs. Pickett the rules and regulations in regards to Mrs. Pickett respecting the Cornel Companies visitation rules. Mr. Evans asked Mrs. Pickett to leave the facility and come back another visitation day, due to her disrespect to a staff member. On Monday 07-17-06 upon my arrival on shift at 1600 I Ms. Nguyen brought to the Facility Director attention on the incident that happened on 7-15-06. A communication form was given to Resident Pickett, informing him his wife may not visit at the center for the next 30 days.*"

1

On July 24, 2006, the U.S. Pretrial Services Officer received a telephone call from the North Star Center in which it was disclosed that a work-site verification was conducted at 5:15 p.m. at the Bentley Mall construction site, at which time the defendant was not located at his place of employment. The defendant subsequently returned to the facility at approximately 5:45 PM, and upon further questioning, it was discovered that he had left work at 3:30 PM and had gone shopping with his wife before returning to the facility.

On July 25, 2006, this officer received notice of the above violations at North Star Center. Specifically, according to the Memorandum, *"Federal Resident Pickett, Kevin is employed by JGC Construction, contact information office 488-9000, and the work site 32 College Road cell number 378-5420. His hours of employment are Monday through Friday 0700-1730. On 7/24/06 while doing an employee check on Resident Pickett, Kevin (PACTS 5785), I Federal Case Manager Laura McAdams called JGC Construction work site cell number (378-5420) at 1630, there was no answer, I left a message for Mr. Ken Charron to return my call. I also called the office number (488-9000) and left a message. At 1645 I tried the numbers again, no answer. I then informed the Director Pauline Rodriguez who then sent our Surveillance Monitor (SM) Andres Restrepo-Posada to check on Resident Pickett at his work site (32 College Road). SM Restrop-Posada called from Mr. Pickett's work site and said no crews were at the work site. Resident Pickett was informed during orientation/intake of the rules regarding policy and procedures for signing out for employment, court and treatment appointments on 6/26/06. He was informed of the following: when signing out he will report to security and initial in the Federal Log his destination, phone, and hour of sign-out and sign-in; the destinations listed are the only locations that he is approved to go to; when leaving any destination that is approved he will need to call in a location change; when getting off work early he is to call and inform security that he is off work early and returning to the center. The above policy and procedures are also stated in the Federal Handbook which he was given at admission on 6/23/06."*

On July 25, 2006, the Facility Director issued the following memorandum to the U.S. Pretrial Services Officer, "On July 24th, Resident Kevin Pickett arrived here at Northstar Center at about 5:45 PM. His wife, Ann Pickett, whom is his court approved transportation provider, dropped him off at the facility. Resident Pickett arrived at the center with a white trash bag full of clothes, food and other unauthorized items. He said he had gotten off work at 3:30 PM and that this wife picked him up at about 4 PM. I asked what he had done between 3:30 PM and 4 PM, and he responded, "just hung out." Further in the memorandum, the Director advised that "Resident Pickett stated to me that he was on his way to the Northstar Center facility at 5:15 PM, and that he wasn't aware that he was not allowed to stop at the store and/or other places at his leisure. Resident Pickett was not at his job site when he was supposed to be. He was signed out to work until 5:30 PM, and I believe, was left unsupervised for several hours by his employer. Resident Pickett, nor his employer, notified anyone about his schedule change, or a change in location. Resident Pickett was in an unauthorized area when shopping and/or going to his home. It seems Resident Pickett does not believe the facility program rules, polices and procedures apply to him. On a previous incident Resident Pickett and his wife showed a total disregard for rules, policy, procedure, and authority...I do not feel that Resident Pickett is a suitable candidate for this facility."

Based on the fact that Pickett is deemed an unsuitable candidate to reside at the North Star Center, coupled with the areas previously identified as risks of danger posed to the community by the defendant, it is respectfully recommended that a warrant be issued for the arrest of the defendant, that his conditions of release be revoked, and the defendant be detained at the Fairbanks Correctional Center, pending the trial.

I declare, under penalty of perjury, that the foregoing is true and correct, except those matters stated upon information and belief, and as those matters, I believe them to be true.

_Marci Lundgren_
Marci D. Lundgren
Senior U.S. Probation/Pretrial Services Officer